UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAMUEL LOVE,

    Plaintiff,

v.

THE UNDEFEATED APPAREL INCORPORATED, A CALIFORNIA CORPORATION,

    Defendant.

No. C 20-00330 WHA

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND INJUNCTION**

## INTRODUCTION

In this ADA action, plaintiff moves for default judgment. For the reasons stated below the motion is **GRANTED.**

## STATEMENT

Plaintiff Samuel Love is a paraplegic with limited ability to walk. He uses a wheelchair for mobility. Plaintiff visited Shirtique, a retail store located at 1 Southland Mall, Hayward, California, in December of 2019. Plaintiff alleges that he noticed that the store "failed to provide [an] accessible sales counter in conformance with the ADA Standards." Further investigation confirmed this observation. Shirtique's sales counter measures 49 inches in height, a full thirteen inches higher than the 36-inch ADA standard for wheelchair accessibility (Love Decl. at ¶¶ 2, 4; Wegman Decl. at ¶ 3).

This suit followed. Plaintiff filed his original complaint and served his summons in January of 2020. By July, defendant had made no reply. Plaintiff requested and was granted an entry of default against defendant on July 30, 2020. In November, however, plaintiff discovered the correct owner of Shirtique: The Undefeated Apparel Incorporated. Plaintiff amended his complaint with leave and served a summons on the correct defendant in mid-November. By February 2021, with no response forthcoming, plaintiff again requested and was granted entry of default on February 18, 2021. Plaintiff served his motion for default judgment on Undefeated in March. Over a year after the first complaint, and nearly four and a half months after the amended complaint, one thing remains: Undefeated's silence (Dkt. Nos. 1, 6–8, 11–13, 15, 19, 20, 22, 23, 25).

Plaintiff sues under Title III of the ADA and California's Unruh Civil Rights Act. He seeks injunctive relief in addition to statutory damages in the amount of $4,000, and attorney's fees and costs in the amount of $4,055. Due to the lack of wheelchair accessibility, plaintiff has been deterred from future visits to Shirtique but hopes to return once the store becomes ADA-compliant (Amd. Compl. at 7; Dkt. No. 23-1 at 6, 7).

## ANALYSIS

When a party fails to plead or otherwise defend against a prayer for affirmative relief, a district court may grant default judgment on the merits of a case. *See* F.R.C.P. 55; *see also Aldabe v. Aldabe*, 612 F.2d 1089, 1092 (9th Cir. 1980). A court must determine whether it has proper subject-matter jurisdiction over the action and personal jurisdiction over the defendant before granting or denying default judgment. *See In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999). Upon satisfying the jurisdictional elements, a court then considers the seven *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). All factual allegations, except those for damages, are taken as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d

915, 917–18 (9th Cir. 1987). Nevertheless, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Furthermore, a defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

1. **SUBJECT-MATTER AND PERSONAL JURISDICTION.**

District courts have subject-matter jurisdiction over civil actions with a federal ingredient. 28 U.S.C § 1331. Supplemental jurisdiction extends to all other claims related to a civil action if (1) a district court has proper subject-matter jurisdiction and (2) if those additional claims form part of the same case or controversy. *Id.* at § 1367. Plaintiff's suit arises under the ADA, a federal statute. This civil action boasts a federal ingredient that satisfies subject-matter jurisdiction. Plaintiff's state Unruh claim directly relates to plaintiff's ADA claim against Undefeated-owned Shirtique. The Unruh claim forms part of the same case/controversy. Supplemental jurisdiction, then, also applies and the district court has proper subject-matter jurisdiction over both the ADA and Unruh claims.

Turning to personal jurisdiction, properly serving a summons on a defendant establishes a court's personal jurisdiction, especially when that defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." F.R.C.P. 4(k)(1)(A). Additionally, Rule 4(e)(1) allows for service "pursuant to the law of the state in which the district court is located." Under California law, California Code of Civil Procedure Section 415.10 allows for personal service, Section 415.20 allows for several methods of substitute service, and Section 415.30 allows for service by mail. Plaintiff properly served the correct defendant (Undefeated) in November and has since notified Undefeated of the motion for default judgment by mail. Furthermore, Undefeated ("a California corporation") owns Shirtique, a retail store in the state of California, and would be subject to the district court's general jurisdiction. Thus, this order finds satisfactory personal jurisdiction by both proper summons and general jurisdiction (Dkt. Nos. 17, 25).

3

### 2. *EITAL* FACTORS.

With sufficient subject-matter and personal jurisdiction over Undefeated, this order now applies the *Etial* Factors.

#### A. Possibility of Prejudice to the Plaintiff.

Undefeated's complete silence and lack of appearance to defend this action indicates that plaintiff would receive no remedy should default judgment be denied. No other avenue for recourse suggests the possibility of prejudice to the plaintiff. The first factor weighs in favor of granting default judgment.

#### B. Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint.

Courts often consider the second and third *Eital* factors together because examining the merits of a substantive claim and the sufficiency of a complaint share the same requirement, *i.e.*, stating a claim "on which the [plaintiff] may recover." *See Kloepping v. Fireman's Fund*, 1996 WL 75314 at *2 (N.D. Cal. 1996) (Judge Thelton E. Henderson) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)); *see also Bd. Of Trustees, I.B.E.W. Local 332 Pension Plan Part A v. Delucchi Elec, Inc.*, 2020 WL 2838801 at *2 (N.D. Cal 2020) (Judge Edward J. Davila).

Plaintiff's motion seeks default judgment for a violation of the ADA and a violation of the California Unruh Act. This order examines each in turn.

##### (1) *Title III of the ADA.*

Title III of the ADA prohibits discrimination based on disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Under Title III, discrimination encompasses "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* at § 12182(b)(2)(A)(iv). To clarify, "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* at § 12182(9).

4

Plaintiff must establish Article III standing as the first step to bringing a claim under the ADA. To establish Article III standing, plaintiff must demonstrate having suffered an injury in fact, traceable to defendant's conduct, that a favorable court decision could redress. *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1162 (S.D. Cal. 2006) (Judge William Q. Hayes). Here, plaintiff satisfies standing. *First*, plaintiff alleges that he personally encountered an architectural barrier in the form of an inaccessible sales counter. This barrier, plaintiff alleges, deterred him from seeking Shirtique's services during his visit in December 2019. Because the counter still exists in its noncompliant state, the counter acts as a present and future deterrent as well. *Second*, plaintiff alleges that Undefeated, as the owner of Shirtique, bears responsibility for the too-tall counter and connects the alleged injury of discrimination to the actions of the defendant. Because of default, these factual allegations are taken as true. Plaintiff's alleged injury, therefore, stems from defendant's behavior. *Lastly*, injunctive relief and statutory damages would redress plaintiff's alleged injuries. Plaintiff satisfies Article III standing.

With sufficient standing, plaintiff must now demonstrate that (1) he is disabled within the meaning of the ADA; (2) defendant is a private entity that owns, leases, or operates a place of public accommodations; and (3) the plaintiff was denied public accommodations by the defendant because of plaintiff's disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Plaintiff must demonstrate two further elements to satisfy an ADA claim based on an architectural barrier: (1) the ADA prohibits that particular architectural barrier in the existing facility, and (2) removal of that prohibited barrier is readily achievable. *See Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1085 (D. Haw. 2000) (Judge Francis I. Yamashita). Plaintiff must satisfy all elements.

*First*, plaintiff is a paraplegic and uses a wheelchair for mobility. A physical impairment that substantially affects a major life activity, such as walking, qualifies as a disability. *See* 42 U.S.C. §§ 12102(1)(A), (2)(A). Plaintiff meets the first requirement.

*Second*, a retail store is a place of public accommodation. *See* 42 U.S.C. § 12181(7)(E). Plaintiff alleges that Undefeated is a private entity who owns and operates Shirtique, a retail

5

store, and therefore a place of public accommodation. Plaintiff submits public records to verify this ownership allegation, satisfying the second requirement (Dkt. No. 23-7).

*Third*, when the sales counter of a place of public accommodation has what is called "a parallel approach" to the sales counter (as Shirtique does here), a portion of that sales counter must be "no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top." ADA 2010 Standards § 904.4.1. Plaintiff points out that the Safe Harbor provision in the 2010 ADA standards does not apply. With no contentions by Undefeated, this order takes these sufficiently-pled facts as true. Plaintiff has been denied access to the goods and services of Shirtique because its counter does not meet ADA accessibility standards; this is a denial of public accommodation by the defendant precisely because of plaintiff's disability (Amd. Compl. at ¶ 24; Dkt. No. 23-1 at 13).

*Fourth*, turning to the specifically-architectural requirements, this first element for looks to ADA standards. Section 904.4.1 of the ADA Standards describes the correct height and width of a wheelchair-accessible sales counter (see *third* element above). Shirtique's counter does not meet the specifications. Plaintiff satisfies this element — that the ADA prohibits the architectural barrier in the facility.

*Fifth*, and regarding readily achievable removal, plaintiff argues that this element is in fact an affirmative defense and has been waived by Undefeated's lack of response. Our court of appeals recently decided that, at summary judgment in ADA cases with a focus on architectural barriers, the plaintiff has the initial burden of "plausibly showing that the cost of removing an architectural barrier does not exceed the benefits under the particular circumstances." *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1040 (9th Cir. 2020). "The defendant then bears the ultimate burden of persuasion that barrier removal is not readily achievable." *Ibid.* This order acknowledges that default judgment is the issue here, not summary judgment. Nevertheless, whether at default judgment as an affirmative defense or at summary judgment after the plaintiff has satisfied her burden, it is the defendant who bears the

6

burden of disproving the ready achievability of removal. Here, Undefeated remains unresponsive (Dkt. No. 23-1 at 13).

Plaintiff contends that the sales counter falls under the type of barrier that the Department of Justice presumes to be removed without "much difficulty or expense." Plaintiff also alleges that numerous alternative accommodations "could be made to provide a greater level of access if complete removal were not achievable." Plaintiff never specifies what those alternatives could be. Nor does plaintiff address how easily, or with what difficulty, Undefeated could replace Shirtique's sales counter. Furthermore, plaintiff does not mention or estimate the expense Shirtique might expend. Nevertheless, from years of dealing with such cases, the undersigned holds the view that a carpenter could rework the counter to lower it without undue expense. Plaintiff satisfies all necessary ADA requirements.

### (2) *California Unruh Act.*

In California, "Any violation of the ADA necessarily constitutes a violation of the Unruh Act," and "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation." Cal. Civ. Code § 51(f); *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F. 3d 837, 847 (9th Cir. 2004). The Unruh Act, unlike the ADA, permits monetary damages that include actual and treble damages, or statutory damages of $4,000 per violation. Cal. Civ. Code § 52(a). Here, plaintiff alleges a legitimate ADA violation based on Shirtique's lack of a wheelchair-accessible sales counter. Consequently, he has properly alleged an Unruh Act violation as well.

To conclude, plaintiff's substantive claims have merit, and he has sufficiently pled his case. The second and third *Eital* factors weigh in favor of default judgment.

### C. The Sum of the Money at Stake.

Plaintiff seeks $4,000 under the Unruh Act and $4,055 in attorney's fees and costs. This order further addresses and adjusts the amounts below, but upon initial observation, the sum is proportional to the conduct alleged and factor four weighs in favor of granting default judgment.

### D. The Possibility of a Dispute Concerning Material Facts and the Possibility of Default to Excusable Neglect.

Undefeated's silence precludes the possibility of a dispute concerning material fact. Moreover, excusable neglect is highly unlikely because plaintiff properly served multiple summons and notices without any response. Continuous, unexplained silence weighs heavily in favor of granting default judgment based on factors five and six.

### E. Strong Policy Favoring Decisions on Merits.

Our court of appeals recommends that "[c]ases should be decided on their merits whenever reasonably possible." *Eital*, 782 F.2d at 1472. To do so here would be unreasonable and unfeasible, given that Undefeated in no way participated in any proceedings. This seventh and final factor weighs in favor of granting default judgment.

### 3. RELIEF REQUESTED.

Because *Eital* factors favor granting default judgment, this order now focuses on the plaintiff's requests for injunctive relief, statutory damages under the Unruh Act, and attorney's fees and costs.

### A. Injunctive Relief.

Plaintiff seeks and satisfies the requirements for injunctive relief in the form of an ADA-compliant sales counter at Shirtique. The ADA allows aggrieved individuals to obtain injunctive relief in architectural barrier matters. *See Molski*, 481 F.3d at 730; *see also* 42 U.S.C. § 12188(a)(2). Our court of appeals has also decided that standard equitable relief requirements "need not be satisfied when an injunction is sought to prevent the violation of a federal statute that specifically provides for injunctive relief." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010) (citations omitted). In sum, when architectural barriers violate the ADA and those barriers can be readily removed, the aggrieved party may request and be granted injunctive relief. *See Moreno v. La Curacao*, 463 F. App'x 669, 670 (9th Cir. 2011).

For the reasons stated in the preceding sections, plaintiff satisfies the necessary requirements to show that he is entitled to injunctive relief with respect to the sales counter at Shirtique.

### B.     Statutory Damages.

Plaintiff seeks $4,000 in statutory damages for defendant's violation of the Unruh Act. To reiterate, a violation of the ADA simultaneously qualifies as a violation of the Unruh Act. Cal. Civ. Code § 51(f). The Unruh Act allows for a minimum award of $4,000 per violation, and plaintiff "need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 731. In this suit, plaintiff sufficiently pleads that the sales counter at Shirtique did not meet ADA standards. This barrier, as a violation of the ADA, also counts as one violation of the Unruh Act, and therefore warrants a statutory award of $4,000.

### C.     Attorney's Fees and Costs.

Plaintiff requests $4,055 in attorney's fees and costs. Such recovery is available to the prevailing attorney under both the ADA and Unruh Act. *See* 42 U.S.C. § 12205; *see also* Cal. Civ. Code § 55. Federal and state courts use the lodestar method to calculate recoverable attorney's fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). This order adjusts and recalculates the attorney's fees and costs for a total amount of $2,975.

#### (1)     *Hourly Rates.*

Market rates in the relevant community ordinarily determine a reasonable hourly rate. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). The fee applicant bears the burden of "produc[ing] satisfactory evidence" to persuade a court that the requested rates fall in line with those of the relevant community. Camacho *v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). A court may look to other decisions within its same forum for direction in determining attorney's fees. *See Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).

Plaintiff requests a total of $3,180 in attorney's fees with hourly rates as follows: $650 for attorneys Russell Handy and Mark Potter, $500 for attorney Amanda Seabock, and $400 for attorney Faythe Gutierrez. Plaintiff submits the declarations of Mr. Handy and fee experts Richard Pearl and John O'Connor for persuasive purposes. Despite requesting specific rates, plaintiff's motion for default judgment also lists the attorney's normal rates. Mr. Handy and Mr. Potter charge $595, Ms. Seabock charges $450, and Ms. Gutierrez charges $400, all by the hour. Whether this listing of regular rates was accidental or intentional, this order finds it curious that plaintiff should request higher rates in this suit for work that his attorneys do on a day-to-day basis; in other words, why is this relatively basic ADA claim for the lowering of a sales counter different than the rest of plaintiff's attorneys' usual ADA claims? With no real answer in the briefs, this order looks to a recent decision in our very district that considered identical statements from Mr. Handy, Mr. Pearl, and Mr. O'Connor in a suit similar to the one here (Dkt. Nos. 23-1 at 22; 23-3, 23-8, 23-10).

In *Johnson v. Cortese*, 2020 WL 7495164 (N.D. Cal. 2020), Judge Edward J. Davila viewed expert and attorney declarations identical to the ones plaintiff submits here, for a suit with two ADA claims, one of which was the lowering of a sales counter. After a thorough analysis that considered other judges' decisions awarding fees to the *same* attorneys involved in the current suit, Judge Davila concluded that Mr. O'Connor's declaration was of limited use and Mr. Pearl's declaration to be "of even less value in determining a reasonable rate." *Id.* at *9. This order agrees. Ultimately, Judge Davila awarded Mr. Handy and Mr. Potter $475 per hour, Ms. Seabock $350 per hour, and Ms. Gutierrez $250 per hour because "the Court sees no reason to depart from the rates that courts in this District have recently and repeatedly found reasonable." *Id.* at *10. To repeat, *Cortese* was a suit like this one, whose plaintiff used the same attorneys to sue for two ADA claims. This order does not suggest that attorney's fees will forever plateau at a stagnated rate. Rather, this order feels comfortable following the suggestion of our court of appeals to accord persuasive weight to another judge's decision within our same forum, especially when that decision was decided a mere four months ago and covered virtually the same claim with identical declarations regarding identical attorneys. *See*

*Barjon*, 132 F.3d at 500. Accordingly, this order finds reasonable hourly rates as follows: $475 per hour for Mr. Handy, $475 per hour for Mr. Potter, $350 per hour for Ms. Seabock, and $250 per hour for Ms. Gutierrez (Dkt. Nos. 23-1 at 22; 23-3, 23-8, 23-10).

### (2) *Reasonable Hours.*

Plaintiff submits a billing statement for this suit that totals 6.1 hours. This order finds the majority of the time billed to be reasonable but will deduct 0.3 hours, or eighteen minutes, from Ms. Seabock's time. On three instances, Ms. Seabock entered 0.1 hours for review of standard docket entries (case assignment, case management scheduling, and the clerk's entry of default). Again, this order turns to another recent Judge Davila default judgment decision, concerning the same attorneys, in *Johnson v. Progreso Dev., LLC*, 2020 WL 6136093 (N.D. Cal. 2020) (Judge Edward J. Davila). There, Judge Davila stated, "While the Court agrees that billing for time spent reviewing court orders is generally reasonable, the Court also expects counsel . . . to be particularly familiar with . . . routine docket entries and communications." *Id.* at *5. Both *Progreso* and *Cortese* dinged Ms. Seabock for her 0.1-hour entries. This order follows suit. Because Mr. Handy testifies to Ms. Seabock's competence and familiarity with "ADA cases at every level of the litigation," review of short, routine docket entries does not merit compensation in this instance (Dkt. No. 23-3 at 4, 8–9).

Using the adjusted hourly rates and hours, this order awards attorney's fees of $2,100 as detailed below.

| Attorney | Total Time (hours) | Hourly Rate | Amount |
|---|---|---|---|
| M. Potter | 1.1 | $475 | $522.50 |
| R. Handy | 1.3 | $475 | $617.50 |
| A. Seabock | 1.1 | $350 | $385.00 |
| F. Gutierrez | 2.3 | $250 | $575.00 |
| **Total** | | | **$2,100.00** |

### (3) *Costs.*

Plaintiff additionally seeks costs totaling $875: $400 (filing fee) + $75 (service costs) + $400 (investigation). Under the ADA, a court has discretion to award the prevailing party "a

reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205; *see also Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). The submitted billing statement includes line items for "Filing Fees" at $400 and "Investigator" at $400. The billing statement also includes $75 for service fees (this order notes an additional $30 expended for summons but defers to the billing statement's lower amount). The submitted documentation constitutes sufficient evidence of costs and this order grants an award of $875 (Dkt. Nos. 7, 17, 23-1 at 23, 23-3 at 7).

## CONCLUSION

For the reasons stated above, default judgment is **GRANTED.**

Plaintiff's request for statutory damages in the amount of $4,000, attorney's fees in the amount of $2,100, and costs in the amount of $875 for a total of $6,975, is **GRANTED.**

Plaintiff's request for injunctive relief is **GRANTED.** To the extent that Undefeated has the legal right and ability to do so, it must provide a wheelchair-accessible sales counter in compliance with ADA Guidelines at the Shirtique store located at 1 Southland Mall, Hayward, California. For the contempt power of the district court to be available, this order must be served by process server on the defendant(s).

**IT IS SO ORDERED.**

Dated: April 12, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE